# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 21, 2001

## STATE OF TENNESSEE v. DAVID GLENN AYERS

**Appeal from the Criminal Court for Anderson County**
**No. 99CR0274    James B. Scott, Judge**

**No. E2000-03074-CCA-R3-CD**
**October 29, 2001**

The defendant, David Glenn Ayers, was convicted of driving under the influence, second offense. The trial court imposed a sentence of 11 months and 29 days with release eligibility after service of 75%. In this appeal of right, the defendant challenges the sufficiency of the evidence, argues that the trial court should have set aside the verdict as thirteenth juror, and contends that the sentence is excessive. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Ann D. Coria, Clinton, Tennessee, for the appellant, David Glenn Ayers.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Jan Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At 4:00 A.M. on Sunday, July 18, 1999, Officer Shannon Gray of the Clinton Police Department observed a green 1998 Mazda pickup truck being driven erratically along Andersonville Highway. When Officer Gray observed the vehicle cross the center line of the highway by "a foot, foot and a half," and cross "the white fog line on two or three different occasions," he activated his blue lights. When the vehicle, which was being operated by the defendant, did not immediately respond, the officer turned on his siren. When the vehicle stopped, Officer Gray confronted the defendant and smelled alcohol. The defendant explained that he had been at the Eagle's Club in Lafollette, some 25 miles from Clinton, and was on his way to his girlfriend's house in Oak Ridge. At that point, the officer observed a wet spot in the crotch area of the defendant's pants. When asked whether he had consumed any alcohol at the Eagle's Club, the defendant answered that he had had eight or nine beers and two or three mixed drinks. After confirming that the defendant had no medical problems, Officer Gray administered field sobriety tests, including the heel-to-toe walk, one-leg stand, finger dexterity, and alphabet recitation tests. In the opinion of the officer, the

defendant was able to perform satisfactorily only on the alphabet and the finger dexterity tests. Officer Gray described the defendant as having slurred speech and "a little red" in his eyes. After placing the defendant under arrest, the officer searched the interior of the vehicle but did not find any containers. The defendant was taken to the Anderson County jail where he declined to take a Breathalyzer examination.

The defendant, who was working as a construction superintendent for a company located in Pennington, South Carolina, at the time of his arrest, testified that he had been working at a job in Jamestown, 68 miles from his residence. His workday began at 4:00 A.M. when he got up for work and ended at approximately 5:30 P.M. After work, the defendant attended a birthday party for a child and later, at approximately 11:30 P.M., he went to the Eagle's Club. At trial, he testified that he had talked with several friends and had consumed three or four mixed drinks, but no beer, before leaving the club shortly after 3:00 A.M. The defendant claimed that on his way to Oak Ridge, he stopped at an Exxon Market to purchase a snack and a cup of coffee. The defendant testified that as he entered Clinton, he hit "a rough spot in the road, and dropped my coffee . . . in my crotch area." The defendant explained that he panicked and briefly let go of the steering wheel, causing him to swerve. He testified that he traveled to a well-lighted area at the Get-and-Go Market in Clinton before stopping his vehicle. The defendant acknowledged that he may have smelled like alcohol but contended that he did "fairly well" on his field sobriety tests except for the one-leg stand, which he "totally flunked." He claimed that he was tired and unable to perform the test because of a back injury for which he had surgery in 1991.

## Sufficiency of the Evidence

The initial contention of the defendant is that the proof was insufficient to establish the offense of driving under the influence of an intoxicant. Citing State v. Ann Elizabeth Martin, No. E1999-01361-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Sept. 8, 2000), the defendant contends that "a momentary drift out of a lane" would not constitute a basis for the arrest. He argues that his driving in no way affected any other cars that traveled along the roadway and that he had a plausible excuse, spilling hot coffee into his lap, for a temporary lapse in the control of his vehicle. His successful performance in two of the four field sobriety tests, the defendant submits, lends credence to his claim that he was not under the influence of alcohol.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn.

298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Tennessee Code Annotated § 55-10-401(a) prohibits "any person or persons to drive or to be in physical control of any automobile or any motor-driven vehicle on any of the public roads and highways of the State of Tennessee or on any streets or alleys . . . or any other premises which is generally frequented by the public at large while under the influence of an intoxicant. . . ." In this instance, the jury heard testimony that the defendant was driving erratically, crossing the center lane at least once and the white fog line located on the right edge of the driving surface two or three times. Officer Gray testified that this manner of driving continued for at least a mile. The defendant candidly acknowledged that he had been at the Eagle's Club in Lafollette and, while denying that he had any beer while at the club, he conceded that he had consumed "three or four mixed drinks of Crown and Coke." It was the prerogative of the jury to assess the credibility of the witnesses, taking into consideration the relative inexperience of the officer who had been employed as a policeman for approximately one year, and to conclude that the defendant, because of slurred speech, redness of the eyes, and the inability to perform two of the four field sobriety tests, was operating his vehicle under the influence of an intoxicant. When there is proof of each and every element of the offense, this court may neither second-guess the jury's credibility assessment of the witnesses nor reweigh the testimony.

### Thirteenth Juror Rule

The defendant next asserts that the trial court erred by failing to perform its duty as thirteenth juror. Rule 33(f) of the Tennessee Rules of Criminal Procedure provides that a "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This rule, which was effective July 1, 1991, would have changed the holdings of our supreme court in State v. Johnson, 692 S.W.2d 412 (Tenn. 1985), and State v. Atkins, 786 S.W.2d 642 (Tenn. 1990), which had abolished the thirteenth juror rule in criminal cases. In State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995), our supreme court acknowledged the restoration of the thirteenth juror rule as it existed at common law, thereby mandating that trial judges exercise the duty to function as a thirteenth juror in criminal cases. An order overruling a motion for new trial establishes a presumption that the trial court has exercised the duty. No explicit statement on the record is required. Carter, 896 S.W.2d at 122. It is only when the trial court expresses dissatisfaction or disagreement with the jury verdict or makes statements indicating that it has absolved itself of its responsibility that the judgment should be set aside.

In State v. Moats, 906 S.W.2d 431 (Tenn. 1995), the state conceded that the trial court had failed to act as thirteenth juror by entering the judgment while expressing doubts about the weight of the evidence and concluding that it was inappropriate to overturn the jury verdict. Our supreme court determined that because the trial court had misconstrued its authority to grant a new trial under the thirteenth juror rule, a new trial was necessary:

The trial judge is in a difficult position to make a thirteenth juror determination after a remand which would not occur until after the case works its way through the appellate courts. By that time, the trial judge is unlikely to have an independent recollection of the demeanor and credibility of all the witnesses.

Moats, 906 S.W.2d at 431.

Here, the defendant filed a motion for a new trial. As one of the grounds for relief, the defendant contended that the "weight of the evidence mandates that the court set aside the verdict of guilty and the sentence as the 'thirteenth' juror." The order overruling the motion for new trial provides as follows:

It is ordered that the defendant's motion for new trial is overruled for the reason that the defendant failed to appear on the date set for the motion. The clerk will send a copy of this order to the parties.

The purpose of the thirteenth juror rule is to be a "safeguard against a miscarriage of justice by the jury." Id. at 434 (quoting State v. Johnson, 692 S.W.2d 412, 415 (Tenn. 1985)). The rule requires that the trial judge must be personally satisfied with the verdict. State v. Dankworth, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995).

In this instance, there is no indication that the trial court exercised its affirmative duty to act as thirteenth juror. Because the denial of the motion for new trial was based upon the defendant's failure to appear, the record is silent on the issue. Nevertheless, this court has ruled that the trial court "need not make statements in the record of its approval of the verdict, rather, when it simply overrules a motion for new trial without comment, this [c]ourt may presume that the trial court approved the verdict as the thirteenth juror." State v. Robert Bacon, No. 03C01-9608-CR-00308 (Tenn. Crim. App., at Knoxville, Jan. 8, 1998). In Bacon, this court emphasized that it was only when the trial court absolved itself of the responsibility or expressed dissatisfaction with the verdict that a new trial was in order. Absent evidence to the contrary, it is implicit by the denial of the motion for new trial and the entry of the judgment that the trial court exercised its responsibility. Moreover, both the tone and content of the comments made by the trial judge during the sentencing hearing signal a satisfaction with the verdict. While explicit approval would have been preferable for purposes of our review, statements made at the sentencing hearing establish that the trial court was satisfied with the finding of guilt.

## Sentencing

As his final issue, the defendant argues that the sentence of 11 months and 29 days, with a release eligibility date after service of 75% of the sentence, was excessive. The defendant argues that there is some question regarding his impairment and that the trial court did not consider his work record, his family circumstances, or alternative measures such as alcohol or psychological treatment before imposing the relatively lengthy jail sentence. The state argues to the contrary.

-4-

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In misdemeanor sentencing, the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. The sentence must be specific and consistent with the purposes of the Act. Tenn. Code Ann. § 40-35-302(a), (b). Not greater than 75 percent of the sentence should be fixed for service by a misdemeanor offender; however, a DUI offender may be required to serve the full 100 percent of his sentence. Tenn. Code Ann. § 40-35-302(d); Palmer v. State, 902 S.W.2d 391, 393-94 (Tenn. 1995). In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d).

Upon service of the required percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Appellate review of misdemeanor sentencing is de novo with a presumption of correctness. See State v. Troutman, 979 S.W.2d 271 (Tenn. 1998).

At the sentencing hearing, it was established that the defendant, who was 38 years of age, had prior convictions for vehicular homicide by means of intoxication in 1987 and driving under the influence and driving on a revoked license in 1991. The defendant received a nine-year sentence in

the Department of Correction for the vehicular homicide and served a term in jail for the prior DUI offense.

The defendant resides with his parents and has custody of a three-year-old son jointly with his mother. The defendant occasionally resides with a girlfriend in Scott County during which time the defendant's mother retains custody of his son. The defendant is employed in construction, specializing in commercial metal framing and drywall. At the time of the sentencing hearing, he received $10.00 per hour in compensation. The defendant expressed remorse for having used alcohol before driving and indicated satisfaction with the jury despite his belief that he "wasn't at that point" of intoxication. The defendant described himself as an alcoholic and stated that he had participated in alcohol rehabilitation while in prison and, prior to that, received further treatment while in a community corrections program. While acknowledging that he had "not been there faithfully like [he] should have," the defendant stated that he had attended a few Alcoholics Anonymous meetings.

In imposing sentence, the trial court placed particular emphasis on the defendant's prior convictions for vehicular homicide and, within four years thereafter, a first offense for driving under the influence. The trial court rejected the defendant's assertion that he was able to control his drinking.

The minimum possible sentence for second offense driving under the influence is 45 days. The record demonstrates that the trial court considered sentencing principles and guidelines in imposing the sentence. Certainly, a previous history of criminal convictions is a basis to enhance the sentence. See Tenn. Code Ann. § 40-35-114(1). The seriousness of the offenses and their similarity to the current offense are a proper basis for concern. As our supreme court ruled in State v. Troutman, "society demands protection from those who habitually drink and drive in complete disregard for the welfare of others and for the laws of this state." 979 S.W.2d at 274. In our view, the trial court imposed an appropriate sentence.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE